IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THERESA TOLBERT-BOYD,        :
Individually and as Personal
Representative of the Estate of :
Donald Franice Boyd
                                      :

    v.                       :  Civil Action No. DKC 19-3020

                                      :

MGM NATIONAL HARBOR, LLC, et al.
                                      :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this wrongful death and survival action is the motion to dismiss filed by Defendants MGM National Harbor, LLC ("MGM") and National Harbor Grand, LLC ("National Harbor Grand") (collectively, "Defendants"). (ECF No. 14). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part.

**I.    Background**

Unless otherwise noted, the facts outlined here are set forth in the amended complaint and construed in the light most favorable to Plaintiff.

In April 2013, shortly after Maryland legalized table games in casinos, Defendants MGM and National Harbor Grand entered a hotel and casino ground lease together. (ECF No. 12, ¶ 7). The

lease outlined that MGM would open and operate the hotel and
casino on the premises which would be owned by National Harbor
Grand.  (*Id.*, ¶ 8).  It was not until the fall of 2016 that the
MGM National Harbor, including a 125,000 square foot casino and
24-story hotel, was open to the public.  (*Id.*, ¶ 9).  Both
Defendants owned, operated, controlled and maintained the
premises on July 9, 2017, the day in question.  (*Id.*, ¶¶ 10-11).
The resort was equipped with multiple security cameras that
produce live feeds which run and are monitored by staff twenty-
four hours a day, seven days a week.  (*Id.*, ¶¶ 12-13).  Further,
the staff on site were trained and certified in Cardiopulmonary
Resuscitation ("CPR").  (*Id.*, ¶ 20).

On July 9, 2017, Mr. Donald Franice Boyd ("Mr. Boyd" or
"Decedent") visited the MGM National Harbor resort to patronize
the casino.  (ECF No. 12, ¶ 17).  Around 10:30 p.m., Mr. Boyd
went into cardiac arrest.  (*Id.*, ¶ 18).  Mr. Boyd was left lying
unattended on the floor of the casino's South Lounge as staff
moved in to keep other patrons away.  (*Id.*, ¶ 22).  At that
time, staff did not provide resuscitative assistance to Mr. Boyd
in the form of CPR or use an automated external defibrillator
("AED").  (*Id.*, ¶ 23).  Mr. Boyd remained unattended until 10:50
p.m., at which time law enforcement arrived, and an "Officer
Proctor" made a call to the Prince George's County Public Safety
Communication (911) at approximately 10:50:51 p.m.  (*Id.*, ¶¶ 25-

2

26).   In response to this call, emergency response personnel arrived on the scene at 10:58:53 p.m. and began resuscitative measures, including the use of an AED.   (*Id.*, ¶ 27).   Mr. Boyd was eventually transported to INOVA Hospital in Alexandria, Virginia where he was diagnosed with an "anoxic brain injury." (*Id.,* ¶ 31).   He was subsequently transferred to Bridgepoint Hospital Capitol Hill in Washington, D.C., where he remained until his death on September 4, 2017.   (*Id.*, ¶ 31).   His cause of death was "Respiratory Failure, Anoxic Brain Injury, Ventricular Fibrillation and Coronary Artery Disease."   (*Id.*, ¶ 32).   In particular, Plaintiff credits the oxygen deprivation of the cardiac arrest as the ultimate cause of death.   (*Id.*, ¶ 28).

On August 29, 2019, Ms. Theresa Tolbert-Boyd, both individually and as personal representative of the estate of Decedent, filed her Complaint against Defendants in the Circuit Court for Prince George's County, Maryland.   On October 16, 2019, Defendants removed the case to this court based on diversity jurisdiction.   On October 25, 2019, Defendants filed a Motion to Dismiss.   On November 8, 2019, Plaintiff filed her Amended Complaint, thus mooting the initial Motion to Dismiss.

The Amended Complaint asserts a wrongful death claim and a survival action and advances three theories of Defendants' negligence as the direct and proximate cause of Mr. Boyd's death.   (*Id.*, ¶ 35).

On November 22, 2019, Defendants moved to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim and/or for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). (ECF No. 14, at 2). On December 6, 2019, Ms. Tolbert-Boyd responded (ECF No. 15), and Defendants replied on December 20, 2019 (ECF No. 16).

## II.  Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). As this court has previously stated, Fed.R.Civ.P. 12(c) does not provide an independent ground for dismissal but should be read in conjunction with other rules authorizing pretrial motions including Fed.R.Civ.P. 12(b). *Geoghegan v. Grant*, No. 10-11137-DKC, 2011 WL 673779, at *3 (Feb. 17, 2011) (citing 5C Wright & Miller, *Federal Practice & Procedure* § 1369 (3d.ed. 2010)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). At this stage, a court must consider all well-pleaded allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff, *see Lambeth v. Bd. of Comm'rs of Davidson Cty.*,

407 F.3d 266, 268 (4th Cir. 2005). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. Analysis

As surviving spouse to Decedent, Ms. Tolbert-Boyd brings a wrongful death action ("Count I") in her personal capacity, as well as a survival action as personal representative of his estate ("Count II"). The Maryland Wrongful Death Act expressly provides a potential remedy "for the benefit of the *wife*, husband, parent[,] and child" of the deceased person. Md.Code Ann., Cts. & Jud. Proc. § 3-904(a)(1) (emphasis added); *see also*

*Spangler v. McQuitty*, 449 Md. 33, 53-54 (2016).   Under the Maryland survivorship statute, the personal representative of a decedent's estate may bring "a personal action which the decedent might have commenced or prosecuted . . . against a tortfeasor for a wrong which resulted in the death of the decedent." *Beynon v. Montgomery Cablevision Ltd. P'ship*, 351 Md. 460 (1998); Md.Code Ann., Cts. & Jud. Proc. § 6-401. Wrongful death and survivor actions form distinct claims, but, in arising from the same set of facts and from the same theories of negligence on behalf of the Defendants, they will be analyzed together.   *See Munger v. United States,* 116 F.Supp.2d 672, 676 (D.Md. 2000) (discussing that while wrongful death actions and survival actions are distinct claims in Maryland, they arise from the same facts with the same witnesses under the same standards of law).

As the basis for both counts, Ms. Tolbert-Boyd asserts three theories of Defendants' alleged negligence which she argues caused her late husband's death, *i.e.* that Defendants: (1) failed to provide CPR despite being licensed in these measures, (2) failed to have an AED or portable defibrillation equipment on site, and (3) did not summon emergency medical personnel until approximately 20 minutes after Mr. Boyd experienced cardiac arrest. (ECF No. 12, ¶ 35).   In turn, Defendants argue that: "(1) Defendants did not owe [Decedent] a

legal    duty    to    administer    resuscitative    assistance,
(2) Defendants did not owe [Decedent] a legal duty to have an
on-site AED or portable defibrillation equipment, and (3) the
Amended Complaint contains insufficient factual allegations to
support  the  conclusory  assertion  that  Defendants  failed  to
summon emergency personnel in a timely manner." (ECF No. 14-1,
at 3).  As will be discussed, the Amended Complaint fails to
state a claim for negligence against Defendants based on a
specific duty to provide on-site resuscitative equipment and
resuscitative  measures,  neither  of  which  Maryland  law
recognizes, but survives dismissal in alleging sufficient facts
to establish a breach of their general duty to care for Decedent
as a business invitee, and to establish this breach as the
proximate cause of his death.

To prove negligence under Maryland law, a plaintiff must
show: "(1) that the defendant was under a duty to protect the
plaintiff from injury, (2) that the defendant breached that
duty, (3) that the plaintiff suffered actual injury or loss, and
(4) that the loss or injury proximately resulted from the
defendant's breach of the duty." *Muthukumarana v. Montgomery
Cty.,* 370 Md. 447, 486 (2002) (quoting *Valentine v. On Target
Inc,* 353 Md. 544, 549 (1999)).

Under Maryland law, there is no general duty to rescue
someone in danger even when a party realizes or should realize

7

that action on his or her part is necessary for protection of the other person unless there is a "special relationship" between them. *Lamb v. Hopkins*, 303 Md. 236, 242 (1985). As both parties acknowledge, of the narrowly drawn categorical exceptions, Maryland law has recognized that an "employee of a business has a legal duty to take affirmative action for the aid or protection of a business invitee." *Southland Corp. v. Griffith*, 332 Md. 704, 717 (1993). Maryland courts have cautioned that such a "special relationship" simply triggers a duty to exercise reasonable care. *Veytsman v. New York Palace, Inc.*, 170 Md.App 104 (2006) (citing *Corindali v. Columbia Courtyard, Inc.,* 162 Md.App. 207, 220 (2005)).[1] In this context, reasonable care means "to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover." *Casper v. Charles F. Smith & Son, Inc.*, 316 Md. 573, 582 (1989). As Plaintiff correctly points out, however, *Southland* also expressly adopted § 314 A of the Restatement (Second) of Torts in stating:

---

[1] Plaintiff quotes *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md.App. 381, 388 (1997), in stating that, "[t]he highest duty is owed to a business invitee," but this quotation in isolation is misleading because the previous sentence makes clear such a statement only means to compare a duty owed to a business invitee to the lesser duty owed to a simple licensee or trespasser. *Id.* at 387-88.

> [A]n employee of a business has a legal duty
> to take affirmative action for the aid or
> protection of a business invitee who is in
> danger while on the business's premises,
> provided the employee has knowledge of the
> injured invitee and the employee is not in
> the path of danger.

*Id.* at 719.   There is no dispute that Decedent, as a patron of
the casino, was a business invitee and thus owed a duty of
reasonable care.   Instead the question turns on whether this
generalized duty includes the more specific duties outlined by
Ms. Tolbert-Boyd in her Amended Complaint and whether
Defendants' conduct breached such a duty.

    **A.   Resuscitative Measures**

    Defendants correctly argue that they had no duty to provide
resuscitative measures to Mr. Boyd.   (ECF No. 14, at 5-6).   As
noted by Defendants, while the facts in *Southland* did not
themselves address the need for first aid or other resuscitative
measures,[2] the *Southland* court favorably cited *Drew v. LeJay's
Sportmen's Café, Inc.*, 806 P.2d 301 (Wyo. 1991).   *Id.* at 717.
In that case, the Supreme Court of Wyoming ruled that a
restaurant owner could discharge the duty to a choking patron
simply by "summoning medical assistance within a reasonable

---

    [2] Defendants' Motion mentions that the *Southland* court did
not require the store clerk to provide first aid.   (ECF No. 14-
1, at 6-7).   The danger to the *Southland* patron was the violence
of an ongoing assault.   Thus, providing first aid to the patron
could have endangered the store clerk.   As Plaintiff points out,
Maryland law does not require an individual to place himself in
harm's way to aid another.   (*See* ECF No. 15-1, at 5-6).

time," and was not required to render first aid, this despite the fact that, as the dissent pointed out, the employees were trained in CPR. *Drew*, 806 P.2d at 305; *see also id.* at 307 (J. Cardine, dissenting).

Nowhere does Maryland law establish aid in the form of CPR as an affirmative duty. As *Southland* itself pointed out, the comments to § 314A state that "[i]n the case of an ill or injured person, he will seldom be required to do more than give such first aid as he reasonably can." *See* 332 Md. at 719 n.8 (citing § 314A of Restatement (Second) of Torts). In suggesting that first aid *may* be required in certain scenarios, this language stops well short of establishing an affirmative duty to render CPR to an injured patron. Moreover, this language notwithstanding, *Southland* quotes *Drew* extensively for the proposition that the restaurant owner there was under no obligation to provide medical training to its food service personnel. *Id.* at 717-18. It would be incongruous, therefore, to hold an employer to a higher duty of care simply because he *did* provide his employees with such training, as the *Drew* court itself refused to do. Ms. Tolbert-Boyd has therefore failed to state a claim that Defendants' owed her late husband a duty to administer CPR in the twenty minutes prior to the arrival of law enforcement. The Motion to Dismiss as it relates to Defendants'

10

alleged negligence in not providing resuscitative aid to Mr. Boyd will be granted.

**B.  AED and Portable Defibrillation Equipment On-Site**

Despite citing the lack of an automated external defibrillator ("AED") or a "readily available portable defibrillation equipment" on site as proof of Defendants' negligence (ECF No. 12, ¶ 35), Ms. Tolbert-Boyd subsequently concedes in response to the Defendants' motion that "there is no statutory requirement that Defendants maintain AED and/or portable defibrillation equipment on site." (ECF No. 15, at 6). While she maintains this failure to have such a device is relevant to the question of whether Defendants' response was reasonable, it does not constitute a freestanding part of a general duty of reasonable care for business invitees where the legislature has declined to require it by statute.  Other jurisdictions have similarly declined to recognize a common law duty to have or administer such equipment absent a statutory requirement. *L.A. Fitness Int'l, LLC v.* Mayer, 980 So.2d 550, 558 (Fla.Dist.Ct.App. 2008) ("[Courts in other jurisdictions] have declined to extend the duty of reasonable care to include providing medical care or medical rescue services") (citing *Salte v. YMCA of Metro. Chi. Found*, 351 Ill.App.3d 524, 527-29 (2004) (holding that the owner of a health club did not have a duty to have a cardiac defibrillator on the premises or to use

11

it on a health club member suffering cardiac arrest); *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 586-90 (2002) (holding a tennis club owed no duty to a member having a heart attack to have or maintain an a defibrillator); *Rutnik v. Colonie Ctr. Court Club, Inc.*, 672 N.Y.S.2d 451, 453 (1998) (holding that a racquetball club was not negligent for not having a defibrillator on site for emergency use)). Defendants' Motion to Dismiss as it relates to Defendants' alleged negligence in not providing an AED or portable defibrillation equipment on site will be granted.

### C. Summoning Medical Assistance

It is conceded that Defendants owed Mr. Boyd at least a general duty of care as a business invitee. Plaintiff sufficiently alleges that Defendants' inaction and alleged failure to summon medical assistance in a timely manner breached that duty, and that this breach was the proximate cause of Mr. Boyd's eventual death. The *Southland* court plainly stated: "It is evident from the decisions in other jurisdictions and from the various authorities that a shopkeeper has a legal duty to come to the assistance of an endangered business visitor if there is no risk of harm to the proprietor or its employees." 332 Md. at 719 (discussing a 7-11 store clerk's responsibility to come to the aid of an off-duty police officer being assaulted in the store's parking lot). Nevertheless, as Defendants

correctly point out, this decision was narrowly drawn to the facts at hand in stating that the store owed the off-duty officer, as a "business visitor," "a legal duty to aid (call the police) when he requested assistance." *Id.* at 720. Moreover, a business owner does not insure an invitee's safety, but rather must "have actual or constructive notice that the [p]laintiff was at an unreasonable risk of injury while on its premises." *Jackson v. A.M.F. Bowling Ctrs., Inc.*, 128 F.Supp.2d 307, 313 (D.Md. 2001) (citing *Bender v. Nalle, Inc.*, 261 Md. 82, 87 (1971) and *Litz v. Hutzler Bros. Co.*, 20 Md.App. 115, 122 (1974)). Where such notice exists, courts in other jurisdictions have generally held that a business owner satisfies his legal duty to aid a patron during a medical emergency by summoning medical assistance within a reasonable time. *See L.A. Fitness Int'l, LLC*, 980 So.2d at 558-59 (collecting cases and arguing "non-medical employees certified in CPR remain laymen and should have discretion in deciding when to utilize the procedure.").

Defendants attempt to distinguish *Southland* in that there, unlike here, there was a clear and unequivocal request by the son of the victim to the store employee to call the police; this factual difference is not dispositive. (ECF No. 14-1, at 9). The request to the store clerk in *Southland* went to proving the clerk was on *notice* of the danger to a business invitee, and not

13

to the question of the reasonableness of his subsequent inaction. Other courts have construed *Southland* in this way. *See e.g. Estate of Short ex rel. Short v. Brookville Crossing 4060 LLC*, 972 N.E.2d 897, 906 (Ind. 2012) (distinguishing the employee's lack of notice from other cases, including *Southland*, wherein the business employee was on notice of a patron's "peril"); *Jackson*, 128 F.Supp.2d 307, 312-13 (similarly highlighting the employee's knowledge of the danger in *Southland*). Here, the Amended Complaint specifically alleges how Defendants were on notice of Mr. Boyd's emergency even in the absence of such a request. (ECF No. 12, ¶ 37).

On the question of breach, the Amended Complaint focuses on the twenty-minute period of possible inaction from when Mr. Boyd first experienced cardiac arrest to when law enforcement first arrived to assess the scene and contact emergency assistance. (ECF No. 12, ¶ 25). Defendants argue that Plaintiff's allegations and conclusions in the Amended complaint seem to conflate the initial arrival of law enforcement after twenty minutes and their call to emergency personnel with Defendants' own response to the emergency. (ECF No. 14, at 9; *see also* ECF No. 12, ¶¶ 25-26). Plaintiff responds that emergency responders arrived within eight minutes of the eventual call and thus a [more] prompt call would have provided Mr. Boyd with emergency services at least twelve minutes earlier than produced by their

14

inaction.   (ECF No. 15, at 8).   The Amended Complaint does not state who "Officer Proctor" was, why he was the first responder on the scene, or whether Defendants summoned him.   It is silent on any action taken by Defendants at all, other than to keep bystanders away.   The permitted inference is that Defendants did not timely summon appropriate aid.   It may be that discovery will reveal what action Defendants took, and when, to summon assistance, and the matter can again be examined on summary judgment.   At that time, the entirety of the circumstances can be assessed to determine whether there is a dispute of material fact as to whether Defendants breached their duty.   For now, Plaintiff sufficiently alleges a breach of the duty Defendants owed Mr. Boyd as a business invitee.

Plaintiff also provides sufficient facts to plead that this breach was the proximate cause of his death, despite Defendants' claim to the contrary.   (*See* ECF No. 14, at 10).   "To be a proximate cause for an injury, the negligence must be (1) a cause in fact, and (2) a legally cognizable cause." *Pittway Corp. v. Collins*, 409 Md. 218, 243 (2009).   Showing cause-in-fact requires a showing that Defendants' conduct actually produced an injury.   There are two tests, the "but-for test" and the "substantial factor" test.   As described in State v. Exxon Mobil Corp., 406 F.Supp.3d 420, 453 (D.Md. 2019):

Under the but-for test, the requisite causation exists when the injury would not have occurred but for the defendant's conduct. *Pittway*, 409 Md. at 244, 973 A.2d at 786-87 (citing *Peterson [v. Underwood*, 258 Md. 9, 16 (1970)]. The [but-for] test applies in cases where only one negligent act is at issue. *Id.* at 244, 973 A.2d at 786.

The Maryland Court of Appeals has also adopted the substantial factor [test] set forth in the Restatement (Second) of Torts (1965). *Pittway*, 409 Md. at 244, 973 A.2d at 787 (citing *Eagle-Picher Indus., Inc. v. Balbos*, 326 Md. 179, 208-09, 604 A.2d 445, 459 (1992). Under the substantial factor test, the requisite causation may be found if it is "'more likely than not'" that the defendant's conduct was a substantial factor in producing the plaintiff's injuries. Copsey [v. Park*, 453 Md. 141, 164 (2017)] (quoting *Pittway*, 409 Md. at 244, 973 A.2d at 787); *accord* Balbos, 326 Md. at 209, 604 A.2d at 459. This test applies when two or more independent acts bring about an injury. *Pittway*, 409 Md. at 244, 973 A.2d at 787.

The amended complaint alleges that Decedent's heart stopped and his brain was deprived of oxygen for an extended period of time due to Defendants' breaches and that, had they acted properly, he would not have died. The complaint also alleges that Defendants' actions "directly or proximately caused profound health consequences . . . resulting in conscious pain and suffering and a slow and painful death." (ECF No. 12, ¶¶ 28-31). Defendants contend that these allegations are insufficient to plead causation. While "threadbare, this is sufficient to give Defendants notice of the claim and thus survives a [Fed.R.Civ.P.] 12(b)(6) motion to dismiss." *Manchanda v. Hays Worldwide, LLC*, 2014 WL 7239095, at *4

16

(E.D.Va. Dec. 17, 2014).   While the actual response time by Defendants is in dispute, taking their alleged twenty-minute inaction as true, Plaintiff has raised at least the possibility that Defendants' inaction was not only the but-for cause of Mr. Boyd's death, in that more prompt medical attention would have saved his life, but that such inaction, in its alleged unreasonableness, properly states a legally cognizable cause of death.   Given such questions remain open ones, dismissal at this stage would be improper and Defendants' third basis for its motion is denied.

## IV.  Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendants will be granted in part and denied in part.   A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
